NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BRYAN WITHERSPOON, | : | |
| | : | Civil Action No. 14-6781 (JMV) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| C. RAY HUGHES; ET AL., | : | |
| | : | |
| Respondents. | : | |

APPEARANCES:

Bryan Witherspoon
#717025
Kintock 3 Bldg. #1
50 Fenwich St.
Newark, NJ 07114
    Petitioner, *pro se*

Stephen A. Pogany
Essex County Prosecutor's Office
50 West Market Street
Newark, NJ 07102
    on behalf of Respondent.

**VAZQUEZ, District Judge**

## I.    INTRODUCTION

This matter comes before the Court upon the Petition for a Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2254 (Dkt. No. 1) filed by Bryan Witherspoon ("Petitioner"), an inmate confined at Kintock in Newark, New Jersey. Respondents filed an Answer to the Petition. (Dkt. No. 6.). The petition is **DENIED** for the following reasons.

## II.     FACTUAL BACKGROUND

The factual background of this case was summarized by the Appellate Division of the Superior Court of New Jersey ("Appellate Division") in an unpublished opinion upon Petitioner's direct appeal of his conviction and sentence.[1]  *State v. Walker and Witherspoon*, Docket Nos. A-2528-11T3, A-2989-11T3 (N.J. App. Div. December 11, 2013); (Docket 6-29).

Defendants Quarwee Walker and Bryan Witherspoon were tried jointly and convicted of drug offenses and conspiracy. On direct appeal they claimed plain error in the jury instructions and errors at sentencing. The Appellate Division upheld their convictions and affirmed Witherspoon's sentence.

The State's witnesses were East Orange Detectives Lance Merrill, Rahsaan Johnson, and Ramon Rodriguez. They presented evidence that Walker and Witherspoon conspired to and did sell crack cocaine from December 10, 2008, through January 1, 2009, including sales on December 10, 11, 16 and 30, and on January 1. Each sale was made to Merrill, acting undercover, with either Johnson or Rodriguez observing from twenty-five to fifty feet away. The sales occurred between 8:00 and 8:40 p.m., near or on the enclosed front porch of a house in an area lit by a streetlamp and by the lights of the adjacent high school football field and parking lot. Both Johnson and Rodriguez knew Walker and Witherspoon prior to the events in question.

On December 10, Johnson observed Walker drive up in a GMC Yukon registered to Walker. Walker and Witherspoon greeted each other and walked toward the house. Merrill approached Walker and Witherspoon, asked for crack, and gave Walker $50. Walker went inside the Yukon, emerged, and handed five bags of crack to Merrill. Walker and Witherspoon then went

---

[1] The facts found by the Appellate Division are presumed correct pursuant to 28 U.S.C. § 2254(e)(1).

into the house together. At trial, Merrill and Johnson identified Walker as the man who sold the crack.

On December 11, Rodriguez observed Merrill approach Walker and ask for crack. Walker told Merrill to see "B" in the house. Merrill entered the porch and met Bryan Witherspoon. Merrill gave $50 to Witherspoon in return for five bags of crack. At trial, Merrill and Rodriguez identified Witherspoon as the man who sold the crack, and Walker as the man who directed Merrill to the house.

On December 16, Rodriguez observed Walker sitting in his Yukon. Merrill approached Walker and asked for crack. Walker gestured towards the house and told Merrill to see "Buzz"—co-defendant Neil Herbert, who is Witherspoon's brother. Inside the porch, Merrill gave $100 to Herbert in exchange for ten bags of crack. Merrill and Rodriguez identified Walker at trial.

On December 30, Johnson observed Witherspoon approach Merrill, who asked to buy ten bags of crack. Witherspoon said he had only one bag, which he gave to Merrill in exchange or $10. Witherspoon and Merrill exchanged phone numbers so they could talk once Witherspoon obtained more crack. Merrill and Johnson identified Witherspoon at trial.

On January 1, Johnson observed as Merrill went to the house. Walker pulled up in his Yukon and got out. Merrill asked Walker for crack. Walker got something out of his Yukon and motioned to Merrill to come with him into the porch. There, Walker gave Merrill five bags of crack for $50. At trial, both Merrill and Johnson identified Walker. Walker was later arrested with $1,100 in cash.

At trial, Walker called his sister Hassana McPherson, his brother-in-law Marc McPherson, and his fiancée Takiya Knowles, who was also the mother of his five children. They testified he was at his son's birthday party at or around the time of the December 11 drug sale. Walker also

3

called Calvin Range and Josephine Witherspoon, residents of the house, who testified that they were friends with Walker and Witherspoon, that Walker and Witherspoon came to play cards at the house frequently, and that Range frequently borrowed Walker's Yukon.

A grand jury indicted Walker, Witherspoon, and others with a series of third-degree offenses. Regarding December 10, 2008, Walker was charged with possession of cocaine, N.J.S.A. 2C:35-10a(l), distribution of cocaine, N.J.S.A. 2C:35-5a(l) and -5b(3), and distribution of cocaine within 1,000 feet of a school, N.J.S.A. 2C:35-7 (counts one to three). Regarding December 11, both Walker and Witherspoon were charged with the same trio of substantive offenses (counts five to seven), and with conspiracy to possess cocaine with intent to distribute, N.J.S.A. 2C:5-2 (count four). Regarding December 16, Walker and Herbert were charged with the same three substantive offenses (original counts nine to eleven) and with conspiracy (original count eight). Regarding December 30, Witherspoon was charged with the same substantive offenses (original counts twelve to fourteen). Regarding January 1, 2009, Walker was charged with the same substantive offenses (original counts fifteen to seventeen). Regarding an alleged sale on January 7, 2009, Walker was charged with possession of cocaine, possession of cocaine with intent to deliver, N.J.S.A. 2C:35-5a(l) and -5b(3), and distributing cocaine within a 1,000 feet of a school (counts eighteen to twenty), and with committing the same three offenses with heroin (counts twenty-one to twenty-three).[2] *State v. Walker and Witherspoon*, Docket Nos. A-2528-11T3, A-2989-11T3 (N.J. App. Div. December 11, 2013); (Docket 6-29).

---

[2] The indictment also charged Range, Alberto Alvarez, Keir Meachum, and Cleo Hope with the same offenses regarding January 7. The charges against those defendants, and Herbert, were resolved separately from the trial involving Walker and Witherspoon.

4

### III.    CONVICTION & SENTENCING

Walker and Witherspoon were originally tried from March 28 to April 13, 2011. The jury acquitted Walker of counts eighteen to twenty-three, relating to January 7, 2009. The jury deadlocked as to all other charges and a mistrial was declared.

A second trial on those charges was held from July 12 to 28, 2011, before a new judge ("the trial judge"). Before the second trial, the trial judge dismissed the original count eight conspiracy charge, expanded count four to charge conspiracy from December 10 through January 1, and renumbered the original counts nine to seventeen as counts eight through sixteen. The jury convicted Walker and Witherspoon of conspiring to distribute cocaine from December 10 through January 1 (count four). The jury also convicted Walker of all charged offenses regarding December 10 (counts one to three), December 16 (renumbered counts eight to ten), and January 1 (renumbered counts fourteen to sixteen). The jury convicted Witherspoon of all charged offenses regarding December 11 (counts five to seven) and December 30 (renumbered counts eleven to thirteen).

On October 28, 2011, the trial judge separately sentenced Walker and Witherspoon to a total of ten years in prison, with five years of parole ineligibility, as well as fines and penalties. *Id*.

### IV.    POST-TRIAL PROCEEDINGS

*Direct appeal*: On February 15, 2012, Petitioner appealed his conviction and sentence (Dkt. No. 6-27). The Appellate Division affirmed the conviction on December 11, 2013, in an unpublished opinion (Dkt. No. 6-29). On July 1, 2014, the New Jersey Supreme Court denied further review (Dkt. No. 6-30).

*Post-conviction relief*: Petitioner did not file a petition for post-conviction relief ("PCR").

5

*Writ of habeas corpus*: Petitioner filed a petition for writ of habeas corpus in this Court on October 27, 2014 (Dkt. No. 1), raising one ground for relief: "The Trials Court[']s Instruction on Identification Summarizing the Evidence in a Misleading Manner Deprived The Defendant his rights of due process of law and a fair trial." *Id*. This Court ordered an answer to the Petition from Respondents[3] (Dkt. No. 2), who filed an Answer on February 18, 2015 (Dkt. No. 6) and contend that the jury instruction did not cause constitutional harm and that Petitioner has failed to state a federal claim upon which relief can be granted.

## V. <u>LEGAL STANDARD</u>

28 U.S.C. § 2254(d) of AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "If [AEDPA's] standard is difficult to meet, that is because it was meant to be. [Section] 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. The statute prohibits a grant of habeas relief "unless it is shown that the

---

[3] Respondents to the Petition are C. Ray Hughes (Administrator, Southern State Correctional Facility) and the Attorney General of the State of New Jersey (collectively, "Respondents"). The current Attorney General is Christopher Porrino.

6

earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of [the United States Supreme] Court, 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or that it 'involved an unreasonable application of' such law, § 2254(d)(1); or that it 'was based on an unreasonable determination of the facts in light of the record before the state court, § 2254(d)(2)." *Harrington*, 562 U.S. at 100.

A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth" in Supreme Court precedent, *Williams*, 529 U.S. at 405, or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different" from that reached by the Supreme Court. *Id*. at 406. A state court decision is "an unreasonable application of" clearly established federal law if it 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (citing *Williams*, 529 U.S. at 407-08). The phrase "clearly established Federal law . . . refers to the holdings, as opposed to the dicta" of the U.S. Supreme Court's decisions. *Williams*, 529 U.S. at 412. A federal court "may not grant habeas relief merely because [the court] believe[s] that 'the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation omitted). "Rather, that application must be objectively unreasonable." *Id*. (quotation omitted). Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 88 (citation omitted)." *See also Eley*, 712 F.3d at 846. In other words, an "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (quoting *Renico*, 559 U.S. at 773).

7

The "analysis under AEDPA follows a prescribed path. [A court] must first 'determine what arguments or theories supported or ... could have supported, the state court's decision.'" *Harrington*, 562 U.S. at 102. A reviewing court must next "ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. Finally, a court may, at last, grant habeas relief only if the petitioner demonstrates that the state court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id., see also Eley*, 712 F.3d at 846-47.

Section 2254(d)'s standards apply to the last reasoned state court decision, *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2009), and when a state court summarily rejects a federal claim, it may be presumed that the decision was on the merits, and deference is given. *Harrington*, 562 U.S. at 99. Further, Section 2254(d)'s standards demand that state court decisions be given the benefit of the doubt. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). The petitioner has the burden of proof. *Id*. Review under § 2254(d) is limited to "the record that was before the state court that adjudicated the claim on the merits." *Id*. Moreover, even if a petitioner demonstrates error, the court will grant the writ only if the error was not harmless.

## VI. DISCUSSION

Petitioner raised one ground in his petition, that "the trial courts instruction on identification summarizing the evidence in a misleading manner deprived the defendant his rights of due process of law and a fair trial." Petitioner further acknowledges that he requested the identification instruction at the charge conference, but claims the judge's instruction was one-sided. (Dkt. No. 1 at 6). Petitioner further states that "two of the state's witnesses stated that they knew the defendant beforehand" however, "the judge told the jury that the state had presented the

testimony of three detectives who identified the person who committed the crime that was charged." (Dkt. No. 1 at 6). Petitioner further argues that one of the co-defendants, Neil Herbert, is petitioner's brother and resembles petitioner, and that no "pictures were taken at the times that the sales were made although the detectives claimed to have cameras at all times that the sales were made." *Id.*

When Petitioner raised this claim on direct appeal, the Appellate Division rejected his argument noting that Witherspoon requested "the identification instruction" and that counsel did not object to the charge at the charge conference or at trial. *Id.* at 18-19. As counsel did not object to this charge, Petitioner was required to show plain error. *Id.* The Appellate Division noted that Petitioner "cannot even show error." *Id.* at 19. The Appellate Division found that the trial court's instruction essentially followed the model jury charge. *Id.* at 18. The trial judge instructed the jury that the State had to prove identity beyond a reasonable doubt, and as the model instruction suggested, the judge told the jury that the State had presented the testimony of the three detectives who "identified the person who committed the crimes charged here." *Id.* at 18-19. The judge then instructed the jury that it was their "function to determine whether the identification of the defendant is reliable and believable," and laid out the factors they could consider. *Id.* At 19.

"Trial courts are free to add specific factual references to the identification instruction when necessary for clarity or when the court concludes that such references are required in the interest of justice." *Id.* at 19-20, citing *State v. Robinson*, 165 N.J. 32, 45 (2000). The Appellate Division held it was within the judges "sound discretion" to explain an otherwise unexplained factor: namely that the jury could consider the testimony of Detectives Johnson and Rodriguez—that they knew defendants prior to the offenses, but that such prior knowledge was no substitute

for an identification based on observation at the time of the crime. *Id.* at 20. The judge then specifically explained that, regardless of the Detectives prior knowledge, "[u]nless the…in-court identification resulted from the witness's observations or perceptions of the perpetrator during the commission of the offense, it should be afforded no weight." *Id.* at 19.

In general, a jury instruction that is inconsistent with state law does not merit federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding, the only question for the court to consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Cupp v. Naughton*, 414 U.S. 141, 147 (1973)). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be viewed in the context of the instructions as a whole and the trial record." Id. Further, "in reviewing an ambiguous instruction ..., [the court should] inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Id.* (citations omitted); *see also Smith v. Spisak*, 558 U.S. 139, 149 (2010) (overruling Court of Appeals determination that jury instruction was unconstitutional where such determination had not previously been made by the Supreme Court); *Waddington v. Sarausad*, 555 U.S. 179 (2009).

The United States Court of Appeals for the Third Circuit has observed that a habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions ... must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." *Johnson v. Rosemeyer*, 117 F.3d 104, 111 (3d Cir. 1997). This is because district courts do not "sit as super state supreme courts

for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it." *Id.* at 110.

In this case, the Appellate Division supported its determination that the New Jersey Model Jury Charge with the instructions inserted by the judge on identification did not constitute plain error. The trial court's charge to the jury on identification testimony was proper and did not have the capacity to affect the verdict in any substantial or injurious way, or to unfairly prejudice Petitioner in any way. *See Brecht*, 507 U.S. at 637-38. Petitioner's lone argument that a co-defendant, his brother, looked like him and that the police did not present a photograph, does not demonstrate that Petitioner was denied due process. There is no federal requirement that a photograph must be presented as to identification.

Therefore, having carefully reviewed the jury charges as a whole, this Court finds that Petitioner was not deprived of a fair trial by the identification instruction given, and any error as asserted by Petitioner in this regard was, at the very most, plainly harmless in light of the overall record. Moreover, the Appellate Division's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, Supreme Court precedent. Importantly, this Court notes that Petitioner has not identified a Supreme Court precedent that was contravened by the state court ruling. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## VII. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies his standard by demonstrating that jurists of reason could disagree with the district court's

resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons discussed above, Petitioner has not met this standard, and this Court will not issue a certificate of appealability.

## VIII. CONCLUSION

For the foregoing reasons, Petitioner's habeas petition is denied. A certificate of appealability will not issue. An appropriate order accompanies this Opinion.

Dated: October 16, 2017

s/ John Michel Vazquez  
John Michael Vazquez  
United States District Judge